UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____          │
│ DATE FILED: 2/5/2015             │
└─────────────────────────────────┘
```

LUIS HUGO ESCROGIN,

                    Petitioner,

    -v-

YVETTE TAY-TAYLOR, *et al.*,

                    Respondents.

No. 14-cv-2856 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Luis Hugo Escrogin ("Petitioner"), represented by counsel, brings this petition for a writ of habeas corpus, arguing that he is being illegally detained under section 236 of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1226, and requesting an immediate bond hearing in accordance with section 236(a) of the INA. For the reasons set forth below, the petition is granted.

## I. BACKGROUND

### A. Facts[1]

Petitioner emigrated from the Dominican Republic to the United States as a lawful permanent resident in 1997. (Pet. at 3.) Since his admission to the United States, Petitioner has been arrested on four occasions. (Ret. at 2.) Relevant to the Petition, Petitioner was arrested on August 29, 2006 and, on October 21, 2008, ultimately pleaded guilty to criminal possession of a controlled substance in the fourth degree in violation of N.Y. Penal Law § 220.09 (the "2008

---

[1] The following facts are drawn from the petition filed on April 22, 2014 (Doc. No. 2 ("Petition" or "Pet.")) and Respondents' Return to Habeas Petition (Doc. No. 6 ("Ret.")). In deciding the Petition, the Court also considered Petitioner's memorandum of law in support of the Petition (Doc. No. 5 ("Mem.")), Respondents' memorandum of law in opposition (Doc. No. 7 ("Opp'n")), Petitioner's reply brief (Doc. No. 8 ("Reply")), Petitioner's supplemental submissions (Doc. Nos. 9, 11), and the documents submitted in support thereof.

Conviction") (Ret. at 2; Ret. Ex. 3), for which he received a sentence of five years' probation (Ret. at 2). While on probation, Petitioner was arrested on November 28, 2009 for another narcotics offense. (Ret. at 2.) Thereafter, on June 30, 2011, Petitioner pleaded guilty to criminal possession of crack cocaine in the fourth degree in violation of N.Y. Penal Law § 220.09, for which he again received a sentence of five years' probation (the "2011 Conviction"). (Ret. at 2; Ret. Ex. 4.)

On April 9, 2014, Immigration and Customs Enforcement ("ICE") personnel arrested Petitioner and detained him at the Hudson County Jail in Kearny, New Jersey. (Pet. at 2; Ret. at 2–3.)[2] ICE subsequently commenced removal proceedings against Petitioner in the Varick Street Immigration Court in New York, charging that Petitioner is subject to removal based on the 2008 Conviction pursuant to INA section 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i). (Pet. at 7; Ret. at 3.) ICE also determined that Petitioner's "removal charges rendered him subject to mandatory detention under INA § 236(c)." (Ret. at 3.) Petitioner challenged that determination, and, on June 5, 2014, an Immigration Judge denied Petitioner's request for a change in custody status. (Ret. at 3; Ret. Ex. 7.)

## B. Procedural History

Petitioner commenced this action on April 22, 2014, when he "was physically located within the Southern District of New York" at the Varick Street Detention Center in Manhattan. (Pet. at 6; Ret. at 3.) The Petition seeks, *inter alia*, the issuance of a writ of habeas corpus and an order compelling "an Immigration Judge [to] conduct an individualized hearing at which the Respondents bear the burden of establishing that Mr. Escrogin's continued detention is justified."

---

[2] The parties disagree about where Petitioner was arrested. Petitioner states that he was arrested at a scheduled probation appointment (Mem. at 3), while Respondents contend that the arrest occurred at Petitioner's residence, providing documentary evidence in support of that claim (Ret. at 2 n.1; Ret. Ex. 5). Because the site of the arrest is immaterial to the Court's resolution of the Petition, the Court makes no finding in this regard.

(Pet. at 3.) Respondents contend that Petitioner is subject to the mandatory detention provision of the INA – and, therefore, not entitled to an individualized bond hearing – based on his pre-arrest detention and subsequent convictions for narcotics offenses. (*See* Opp'n at 2.) After receiving full briefing from the parties (Doc. Nos. 5–8) and considering Petitioner's supplemental submissions (Doc. Nos. 9, 11), the Court heard oral argument on October 15, 2014.

## II. Discussion

The Court has jurisdiction to entertain the Petition, which challenges the statutory framework that Respondents have relied upon to detain Petitioner without an individualized bond hearing. *See Gomez v. Napolitano*, No. 11-cv-1350 (JSR), 2011 WL 2224768, at *3 (S.D.N.Y. May 31, 2011) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)); *see also Demore*, 538 U.S. at 516–17 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."). Although Petitioner is presently being detained in New Jersey, jurisdiction is proper in this Court because the Petition was filed while Petitioner was present in the Southern District of New York in connection with his immigration proceedings. *See, e.g., Guillaume v. Muller*, No. 11-cv-8819 (TPG), 2012 WL 383939, at *1 n.1 (S.D.N.Y. Feb. 7, 2012) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004)); *Mendoza v. Muller*, No. 11-cv-7857 (RJS), 2012 WL 252188, at *2 (S.D.N.Y. Jan. 25, 2012).

The issues before the Court involve the interpretation of section 236(c) of the INA, which reads in its entirety:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who –

3

(A) is inadmissible by reason of having
committed any offense covered in section
1182(a)(2) of this title,
(B)  is deportable by reason of having committed
any offense covered in section 1227(a)(2)(A)(ii),
(A)(iii), (B), (C), or (D) of this title,
(C)  is deportable under section 1227(a)(2)(A)(i)
of this title on the basis of an offense for which the
alien has been sentenced to a term of imprisonment
of at least 1 year, or
(D)  is inadmissible under section 1182(a)(3)(B)
of this title or deportable under section
1227(a)(4)(B) of this title,

*when the alien is released,*[3] without regard to whether the alien is
released on parole, supervised release, or probation, and without
regard to whether the alien may be arrested or imprisoned again for
the same offense.

(2) Release

The Attorney General may release an alien described in paragraph
(1) only if the Attorney General decides pursuant to section 3521 of
Title 18 that release of the alien from custody is necessary to provide
protection to a witness, a potential witness, a person cooperating
with an investigation into major criminal activity, or an immediate
family member or close associate of a witness, potential witness, or
person cooperating with such an investigation, and the alien satisfies
the Attorney General that the alien will not pose a danger to the
safety of other persons or of property and is likely to appear for any
scheduled proceeding.  A decision relating to such release shall take
place in accordance with a procedure that considers the severity of
the offense committed by the alien.

*Id.* § 1226(c) (emphasis added).[4]  The parties' briefs present two interpretative questions for the

Court to resolve.  First, whether the phrase "when the alien is released," *id.* § 1226(c)(1), applies

only if the alien is detained *immediately* upon release; and second, whether a "release" under

---

[3] The Court refers to the italicized language as the "when released" clause.

[4] The duties imposed by § 1226(c) were originally executed by the Attorney General; however, the Department of
Homeland Security ("DHS") – which exercises authority over ICE – now performs those duties.  *See, e.g.*, 6 U.S.C.
§§ 202, 251, 557.

section 236(c) is limited to post-conviction releases from physical custody. Because the Court's resolution of this second question renders any discussion of the first question merely advisory,[5] the Court will address only whether section 236(c) is limited to situations where a petitioner has been released from physical custody post-conviction.

## A. Legal Standard

The Board of Immigration Appeals (the "Board") has interpreted section 236(c), concluding that an alien's release from a pre-conviction arrest for an offense that renders him deportable is sufficient to subject the alien to mandatory detention. Consequently, the Court begins its analysis by applying the two-step framework established by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). Under *Chevron*, courts first consider whether Congress directly addressed the precise question at issue or whether the statute is ambiguous. *Id.* at 842. If the statute is unambiguous, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. However, if the statute is "silent or ambiguous with respect to the specific issue," courts proceed to the second step and consider how the agency has interpreted the

---

[5] Although the Second Circuit has yet to answer this first question – that is, whether the "when released" clause applies only if the alien is detained immediately upon release – the Court addressed this precise issue in *Mendoza v. Muller*, finding that "it is not unreasonable to treat all criminal aliens in the same manner and require their detention regardless of whether they evaded detection by immigration officials for hours, days, months, or years after their release from custody for the crimes enumerated in this section." 2012 WL 252188, at *3. Nevertheless, the Court notes that judges in this district have disagreed about which construction to adopt, with some judges taking the view that DHS's duty to detain aliens can eventually expire – the "time-limiting construction" – and other judges concluding, like the Court in *Mendoza*, that once DHS's duty is triggered, DHS is not required to act within a certain amount of time – the "duty-triggering construction." *Compare Martinez-Done v. McConnell*, No. 14-cv-3071 (SAS), 2014 WL 5032438, at *8 (S.D.N.Y. Oct. 8, 2014) (adopting time-limiting construction), *Araujo-Cortes v. Shanahan*, No. 14-cv-4231 (AKH), 2014 WL 3843862, at *8 (S.D.N.Y. Aug. 5, 2014) (same), *and Louisaire v. Muller*, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) (same), *with Straker v. Jones*, 986 F. Supp. 2d 345, 356 (S.D.N.Y. 2013) (adopting duty-triggering construction), *Guillaume*, 2012 WL 383939, at *4 (same), *Gomez*, 2011 WL 2224768, at *3 (same), *and Sulayao v. Shanahan*, No. 09-cv-7347 (PKC), 2009 WL 3003188, at *7 (S.D.N.Y. Sept. 15, 2009) (same).

statute and whether its interpretation is "based on a permissible construction of the statute." *Id.* at

843. If the agency's construction is reasonable, courts must defer to that interpretation. *Id.*

## B. Discussion

Here, there is no dispute that DHS may not detain an alien pursuant to section 236(c) unless

two prerequisites have been met: (1) conviction for an offense that renders the alien deportable

and (2) a qualifying "release." (*See* Doc. No. 12 at 11:24–12:3, 13:21–24, 16:15–20, 19:18–25.)

The parties disagree, however, as to whether these requirements must occur in this sequence.

Petitioner contends that he is not subject to mandatory detention because his arrest and subsequent

release on bail predated the 2008 Conviction, such that he was never "'released' from any sentence

of incarceration or post-conviction custody for his allegedly removable offenses." (Mem. at 18.)

Under Petitioner's formulation of the statute, "'release' as used in [section 236(c)] refers to a

release from a *post-conviction* sentence of incarceration for an enumerated offense, regardless of

whether a non-custodial portion of the sentence has yet to be served." (*Id.* at 19 (emphasis in

original).) Respondents, by contrast, argue that Petitioner "falls within section 236(c) because he

was unquestionably released sometime after his two arrests" (Opp'n at 18), and urge the Court to

defer to the Board, which has twice held that "released" in section 236(c) of the INA includes

release from an arrest even if the arrest and release predated the conviction and the deportable alien

never returned to serve a custodial sentence after his plea and sentencing (Mem. at 17–19 (citing

*Matter of Kotliar*, 24 I. & N. Dec. 124, 125 (BIA 2007); *Matter of West*, 22 I. & N. Dec. 1405,

1410 (BIA 2000))).

As in every case involving statutory construction, the Court's *Chevron* "analysis begins

with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)

(citation and internal quotation marks omitted). The relevant portions of section 236(c) of the INA

provide that: "[DHS] shall take into custody any alien who . . . is deportable by reason of having

committed any offense covered in § 1227(a)(2) . . . of this title, . . . *when the alien is released*,

without regard to whether the alien is released on parole, supervised release, or probation, and

without regard to whether the alien may be arrested or imprisoned again for the same offense." 8

U.S.C. § 1226(c) (emphasis added).

As at least two other courts in this District have found, the plain meaning of the statute

clearly implies that conviction for an offense covered in section 237(a)(2)(B)(i) – which is what

renders the alien deportable in the first place – must precede "release" to trigger the mandatory

detention provision. *See, e.g.*, *Martinez-Done*, 2014 WL 5032438, at *5 (rejecting government's

argument that "release" includes release from pre-conviction arrest); *Straker*, 986 F. Supp. 2d at

362 (finding that "where there has been no antecedent term of imprisonment from which the alien

has been released," an alien is not subject to section 236(c)'s mandatory detention provision).

First, the statute lists the prerequisites in that order, with conviction ("deportable by reason of

having committed any offense covered in section 1227 . . . (B) . . . of this title," 8 U.S.C.

§ 1226(c)(1)(B)) preceding any reference to "release." Second, the clause immediately following

the term "released," which makes clear that mandatory detention is required "without regard to

whether the alien is released on parole, supervised release, or probation," focuses exclusively on

*post-conviction*, non-custodial conditions, and makes no reference to bail or pre-trial release. *Id.*

§ 1226(c)(1). Finally, Respondents' interpretation simply stretches the language of the statute

beyond its plausible limits. As noted above, the statutory language reads in relevant part (and with

ellipses omitted): "[DHS] shall take into custody any alien who is deportable when the alien is

released." *Id.* § 1226(c)(1). The natural reading of this language suggests that DHS must detain

a *deportable alien* at some point following the *deportable alien's release*. But since an alien is

7

not rendered deportable until convicted of a removable offense, it seems obvious that conviction

is a condition precedent to a qualifying release. Respondents' interpretation, in essence, would

rewrite the statute to provide something more akin to: "[DHS] shall take into custody any alien

who is deportable so long as the alien has been released at some point." This construction,

however, is at odds with the plain meaning of the statute. Although Congress was certainly free

to enact such a provision, that is not the statute that was enacted into law.

Because the Court finds that the statute is, in this respect, unambiguous, the Court will not

defer to the Board's determination that a post-arrest release that occurs prior to a removable offense

conviction can constitute a "release" under section 236(c). *See Chevron*, 467 U.S. at 843. Rather,

the Court finds that an alien made deportable by virtue of a conviction for an offense referenced

in section 236(c)(1)(B) becomes subject to mandatory detention only following a post-conviction

"release." Thus, the Court finds that the statute unambiguously requires a qualifying conviction,

followed by a release, before DHS may subject a deportable alien to mandatory detention.

Here, Petitioner's conviction occurred on October 21, 2008.[6] The Court must then

determine whether he was "released" after that date. The term "released" is never defined for

purposes of Title 8 of the United States Code, *see* 8 U.S.C. § 1101, and is susceptible to at least

two interpretations. First, "released" could mean release from physical custody. For instance,

Black's Law Dictionary defines "release" as "[t]he action of freeing or the fact of being freed from

restraint or confinement." Black's Law Dictionary 1403 (9th ed. 2009); *see also Straker*, 986 F.

Supp. 2d at 360. However, "released" could also mean relief from a non-physical restraint, such

---

[6] Although Petitioner was also convicted of an offense on June 30, 2011, Petitioner's deportability is premised solely on the 2008 Conviction. (*See* Opp'n at 4 (" ICE . . . commenced removal proceedings against [Petitioner] by filing a Notice to Appear ("NTA") with the Immigration Court in New York City, charging that, based on his 2008 cocaine conviction, [Petitioner] is subject to removal pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), for having been convicted of a crime involving a controlled substance." (citing Ret. Ex. 6)).)

as "[l]iberation from an obligation, duty, or demand." Black's Law Dictionary 1403 (9th ed. 2009); *see also* Merriam-Webster Online Dictionary, http://www.merriamwebster.com/dictionary/release (last visited Oct. 29, 2014) (defining release as, *inter alia*, "to relieve from something that confines, burdens, or oppresses"). Under the latter interpretation, a defendant could be deemed released from the obligations and constraints of the criminal justice system at the time of sentencing, even though he was on bail and received a non-custodial sentence.

Because the Court finds that the meaning of "released" in the "when released" clause is ambiguous, the Court must next turn to the agency's interpretation of the statute to determine if it "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843 (footnote omitted). In *Matter of West*, the Board considered the appeal of an alien who was held subject to the mandatory detention provision of section 236(c) even though he had never served a custodial sentence. 22 I. & N. Dec. at 1406. Specifically, the alien had been arrested for removable narcotics offenses and released after posting bond, later pleaded guilty, received a sentence of probation, and was subsequently detained by immigration officials pursuant to section 236(c). *Id.* at 1405–06. In that context, the Board interpreted the "when released" clause to refer "to the release of an alien from a restrictive form of criminal custody involving physical restraint to a less restrictive form of criminal custody without physical restraint." *Id.* at 1409. In so doing, the Board explicitly rejected the Immigration and Naturalization Service's argument that "released" in section 236(c) refers not only to release from physical custody but also release from non-physical restraint: the "technical custody of the criminal court." *Id.* at 1408. Furthermore, the parties here agree that the Board's interpretation of "released" – involving physical restraint – is the proper one. (*See* Mem. at 2, 11; Opp'n at 17–19.)

9

The Court finds that this interpretation is a reasonable one. The Supreme Court has "held that where a statute's plain terms admit of two or more reasonable ordinary usages, [an agency's] choice of one of them is entitled to deference." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 989 (2005) (citation omitted). Both definitions of "released" are "reasonable ordinary usages," and the Board's selection of either definition would be entitled to deference. *Brand X*, 545 U.S. at 989. Thus, the Court will defer to the Board's interpretation of "released" in *Matter of West* to refer only to an alien's release "from a restrictive form of criminal custody involving physical restraint." 22 I. & N. Dec. at 1409.

In sum, the Court finds that the statute unambiguously requires (1) a qualifying conviction and (2) release from physical restraint, in that sequence, before DHS may subject a deportable alien to mandatory detention. Here, Petitioner was never "released" from a form of physical restraint following either the 2008 Conviction or the 2011 Conviction. Despite the fact that Petitioner's 2009 arrest occurred while he was serving probation for the 2008 Conviction and ultimately lead to the 2011 Conviction, the 2009 arrest does not constitute a qualifying "release" since it was not "tied to the offense(s) on which deportability is premised." *Gomez*, 2011 WL 2224768, at *2 ("[U]nder the [Board's] current interpretation [in *Matter of Garcia-Arreola*, 25 I. & N. Dec. 267, 267 (BIA 2010)], ICE has mandatory-detention authority with respect to an alien who has been released from custody relating to an offense enumerated in INA § 236(c)(1) . . . ."). Accordingly, the Court holds that Petitioner's continued detention without an individualized bond hearing is unlawful since DHS lacks the authority to detain Petitioner under INA section 236(c). DHS's authority to detain Petitioner instead arises from INA section 236(a), which entitles Petitioner to an individualized bond hearing.

C.  Constitutional Claim

Petitioner also argues that his continued detention without a hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution.  (*See* Mem. at 22–24.) However, because the Court holds that Petitioner is not subject to INA section 236(c)'s mandatory detention provision and, instead, is entitled to a bond hearing pursuant to INA section 236(a), the Court need not reach Petitioner's constitutional challenges to his detention.

III. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT the Petition is GRANTED, and Respondents are directed to provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a).  The Clerk of the Court is respectfully directed to enter final judgment and close this case.

SO ORDERED.

Dated:        February 5, 2015
              New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE